[Civ. No. 10908. First Appellate District, Division Two.—November 28, 1938.]

PACIFIC INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, MILDRED V. L. HANCOCK et al., Respondents.

Keith & Creede for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondents.

NOURSE, P. J.—The petitioner herein seeks to annul the portion of the award to the widow of Robert Hancock which holds it jointly and severally liable with the respondent London Guarantee and Accident Company. The deceased was killed while piloting an aeroplane owned by Adolph B. Spreckels. The petitioner contends that its policy of insurance issued to Mr. Spreckels, the employer, did not cover these activities.

The facts are undisputed, and there is no material conflict in the evidence. The question of law arising in this proceeding is whether a fact-finding body may disregard all the competent evidence upon a material issue and support its judgment by a finding that such issue was not proved.

For many years past, Mr. Spreckels had been engaged in the business of raising horses, and for that purpose had maintained stables for the sale, exhibition and delivery of the horses. Prior to August 16, 1935, he applied to the petitioner for workmen's compensation insurance. The petitioner then made a thorough investigation and examination of the business activities of the applicant and issued a policy of insurance of which the "Declarations" were made a part, reciting that the "operations" of the employer were classified as "SALES STABLES—including exhibition or delivery of horses; Drivers, Chauffeurs and their Helpers: Private Chauffeur: Outservant: Inservant: Occasional Outservant: Occasional Inservant:" The policy also contained this notation: "The foregoing enumeration and description of employees include all persons employed in the service of this Employer in connection with the business operations above described. . . . This Employer is conducting no other business operations at this or any other location not herein disclosed." This policy was renewed on August 16, 1936, and again on August 16, 1937. To cover all these employees as enumerated in the "Declarations" the employer paid to the petitioner an annual premium of $117.

In the latter part of the year 1937, the employer chose to purchase an aeroplane for his private use and pleasure and proposed to employ a pilot for that purpose. He consulted his lawyer and was advised that he should make a written contract with the pilot, and that he should have him covered with compensation insurance. Two insurance brokers were brought in and requested to procure insurance for that purpose. As a result of these negotiations a policy was issued by the London Guarantee to cover this one employee in his operations of the aeroplane. For this coverage the employer paid an annual premium of $378. It was shown to have been a matter of common knowledge among insurance brokers that the petitioner herein never wrote aeroplane coverage, that there were but a small number of companies which wrote such insurance, that they operated by forming a pool to prorate their losses, and that the London Guarantee was a member of such pool and wrote such insurance, while the petitioner herein was not a member of the pool and did not write any of such insurance. With full knowledge of these circumstances, the brokers who were called in in 1937, the representatives of the petitioner, the employer and his counsel all testified to the facts which demonstrated that when the policy was executed by this petitioner, the respective parties did not contemplate nor intend that it should include operations in relation to the piloting of an aeroplane—operations which were not in the mind of the employer at any time prior to the issuance of the policy or of any of the renewals.

In the face of all this uncontroverted evidence, the commission found that the evidence fails to prove that prior to the injury there had existed any intent between the employer and this petitioner to limit the coverage of the policy. We have directed counsel's attention to the negative character of this finding—that it was not necessary to prove an "intent to limit"; the issue was whether there was any intent to "include" the coverage of such employment. We have asked counsel to direct us to some evidence which might support the finding. They have failed to do so.

We are confronted with this situation—the issue was raised by the commission, and met by the petitioner; the widow made no claim against this petitioner, and her rights to compensation are not in the least affected by this proceeding. When the London Guarantee was charged with the claim

for the risk which it expressly assumed, it demanded that this petitioner be compelled to share its loss. The commission thereupon ordered the petitioner brought in, not in answer to the claim of the widow, but upon the request of the other insurer to determine division of the loss. It thus created the issue whether the petitioner's policy covered the loss and cannot now say that there is no issue because the policy is unambiguous and needs no interpretation.

If the commission had found upon the undisputed and uncontroverted evidence that aeroplane coverage was not contemplated and not intended by the parties at any time before or after the policy was issued, the case would be on all-fours with *Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 179 Cal. 432 [177 Pac. 273]. In that case, upon evidence far weaker than what we have here, the commission found the true intent of the parties, and the Supreme Court held that the parties had the right to reform their contract to state their actual intent. Such reformation was made here. We may treat this merely as additional evidence of the true intention of the parties. The petitioner asks that it be given the greater weight of a complete exemption of this coverage. It is pointed out in the case cited that this may be done unless the parties are estopped by intervening rights. There is no estoppel here because no one of the parties interested, the insured, the widow, nor the London Guarantee, had any knowledge that any policy had been issued by the petitioner. To the contrary, the party contestant here knew that the petitioner did not and would not write such insurance.

All the circumstances referred to in the cited case as justifying a reformation of the policy are present here, and there is no rule of law or equity which denies that right.

The portion of the award relating to this petitioner is annulled.

Sturtevant, J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.